IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROLAND E. LEYBA, #1603446 | § | |
| VS. | § | CIVIL ACTION NO. 6:13cv801 |
| OLIVER J. BELL, ET AL. | § | |

### ORDER OF DISMISSAL

Plaintiff Roland E. Leyba, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit against TDCJ employees: Oliver J. Bell (chairman, TDCJ), John R. Rupert (senior warden), Robert Eason (Regional II Director), John R. Wisener (Assistant Warden), FNU White (Lieutenant), FNU Satterwhite (Special Unit Investigator), and FNU Bullard (OIG Officer Personal Hallway Investigator). The basis of the lawsuit was that the defendants failed to protect Mr. Leyba. The complaint was referred to United States Magistrate Judge John D. Love, who issued a Report and Recommendation concluding that the lawsuit should be dismissed with prejudice. Mr. Leyba has filed objections.

### Standard of Review and Reviewability

Where a magistrate judge's report has been objected to, the district court reviews the recommendation *de novo* pursuant to Federal Rule of Civil Procedure 72. *See also* 28 U.S.C § 636(b)(1) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings and recommendations to which objection is made."). During a *de novo*

review, a court examines the entire record and makes an independent assessment of the law. When no objections are filed, plaintiff is barred from *de novo* review by the district judge of those findings, conclusions, and recommendations and, except upon grounds of plain error, from appellate review of the unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir.1996) (*en banc* ).

**Discussion and Analysis of Mr. Leyba's Objections**

The Report concluded that the lawsuit should be dismissed with prejudice because Mr. Leyba failed to allege facts showing that either before or after the incident, the defendants knew of and disregarded an excessive risk to his safety. The Report further found that the "failure to protect claim" fails to state a claim upon which relief may be granted, is frivolous in that it lacks any basis in law and fact, and should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). The Report concluded that the claim, as well as the entire lawsuit, should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Mr. Leyba repeats his argument from his complaint that prison officials knew of the "excessive risk to plaintiff and did nothing to abate or deter the matter". *See* Objections at 1. Mr. Leyba also requests that he be allowed to amend his complaint "to better accomodate (sic) this Court's ability to arrive at a favorable verdict and vindicate plaintiff of his deprivated (sic) rights, privileges and immunities". *See* Objections at 6.

In contrast to Mr. Leyba's argument, the record reveals that Defendants undertook two independent investigations: (1) the Office of the Inspector General initiated its own investigation on October 30, 2012; and (2) TDCJ held an OPI initiated on November 7, 2012, which included a

follow-up Security Threat Group ("STG") investigation as well. *See* Docket Entry #16, Exhibit C – D. Prison officials were responsive to Mr. Leyba's complaints. Thus, Defendants were not deliberately indifferent to Mr. Leyba's safety, rather, the findings of both investigations showed that Mr. Leyba's claims are not supported by the evidence.

On October 20, 2012, Mr. Leyba wrote a letter to Defendant Oliver J. Bell at the Texas Board of Criminal Justice, stating that Mr. Leyba had been involved in an "operation" attempting to identify members of a tobacco ring at the Coffield Unit, and that the officer he was purportedly assisting had given him a disciplinary case. *See* Docket Entry # 16, Exhibit C at 21–23. Mr. Leyba also claimed that he felt his life was in danger and that he was receiving major disciplinary cases for refusing housing due to the situation. *See* Docket Entry # 16, Exhibit C at 20.

Defendant Bell's office received the correspondence on October 29, 2012, and immediately sent a correspondence to the Office of the Inspector General directing them to conduct a life-endangerment study. *Id.* On November 7, 2012, Mr. Leyba initiated an OPI with Lieutenant White, seeking the protection of TDCJ and transfer to protective custody or a mental health facility. *See* Docket Entry # 16, Exhibit C at 12. Mr. Leyba was interviewed by Lieutenant Black on the same day, and Mr. Leyba stated that he was being threatened by four inmates because they believed Mr. Leyba had "snitched" on them. *Id*. at 15. During this OPI, Mr. Leyba alleges that the threats began in April, and that on November 1, 2012, while he was in the dayroom on H-Wing, the four named inmates yelled threatening remarks at him from the recreation yard. *Id*. at 15. The OPI investigator concluded that Mr. Leyba's claim was unsubstantiated. *Id*. at 16.

On November 9, 2012, Mr. Leyba was interviewed by Security Threat Group ("STG") Officer C. Reyes, concerning the purported threats. *Id.* at 19. During this interview, Mr. Leyba altered his story slightly, this time claiming that the four inmates threatened him during the first week of October while he was in the recreation yard; he claims they yelled threats from the H-wing which faces the recreation yard. *Id.* at 19.

Mr. Leyba again changed his story, this time claiming that the threats began in October of 2012 from the previous claim that the threats began in April. *Id.* Mr. Leyba claimed the four inmates that he named wrote the "kites" threatening him, and when asked why Mr. Leyba believed those four inmates wrote the "kites" he said they were the only ones who would write the threatening letters to him. *Id.* Officer Reyes then interviewed the four inmates that Mr. Leyba believed were threatening him, and all four inmates stated that they believed an offender from their own building, named Wickware, turned them in to TDCJ personnel. *Id.* None of the four inmates Mr. Leyba believed threatened him were classified security threats, nor were they gang-affiliated, nor were they housed on H-Wing within the six-months prior to November 9, 2012, STG investigation. *Id.* The STG investigation found no merit to Mr. Leyba's claims. *Id.*

On November 11, 2012, Investigator Daniel Wolfe reviewed TDCJ's OPI and the STG report, and then interviewed Mr. Leyba. *See* Docket Entry # 16, Exhibit C at 7. Mr. Leyba claimed that he began working with Officer Brown in April of 2012, and that he had received a disciplinary on August 8, 2012, for possession of tobacco. *Id.* Mr. Leyba claimed that he was working with another inmate for Officer Brown, but could not name the other offender when asked. *Id.* Mr. Leyba

4

claimed that Officer Brown allowed him to possess tobacco, in order to convince the other inmates that he was involved in the tobacco ring, and that during the course of the "operation" he had provided many names to TDCJ personnel, and as a result, those inmates received disciplinary cases and were sent to segregation because of him. *Id*. Mr. Leyba claimed that the inmates eventually figured out that he had been "snitching" and then began sending Mr. Leyba threatening typewritten messages in "kites". *Id*.

Investigator Wolfe then interviewed Officer Brown. *Id*. Officer Brown denied that he permitted Mr. Leyba to possess tobacco or that he used Mr. Leyba as a "snitch"; Officer Brown submitted a written statement attesting to the same. *Id.* at 9. Based the various interviews and investigations into threats of violence that Mr. Leyba purportedly received, it was clear to officials that Mr. Leyba's claims lacked credibility. In his OPI on November 7, 2012, Mr. Leyba claims that the threats began in April, but only two days later during the STG interview he claims that the threats began in October. Exhibit C at 15; *Id*. at 19.

Notwithstanding the inconsistencies of his story, the fact is that it was not possible for the four inmates to yell threats from H-Wing on November 1, 2012, or during the first week of October, when they had not been housed in H-Wing for the prior six-months. Defendants conducted rigorous investigations into Mr. Leyba's safety concerns but did not find credible evidence in support of his claims; thus, protective measures were not warranted.

On December 14, 2012, Mr. Leyba was involved in an altercation with offender Victor Gomez. *See* Docket Entry # 16, Exhibit A at 7. During lunch, Mr. Leyba picked up a drinking

pitcher and struck Gomez in the face with it. *Id*. at 10. Offender Gomez was not one of the four inmates which Mr. Leyba had previously claimed were threatening him. *See* Docket Entry # 16, Exhibit C at 8. TDCJ had received no information to suggest that Mr. Leyba would attack Gomez or that Mr. Leyba and Gomez were hostile to one another.

Mr. Leyba was interviewed after the altercation and stated that he believed Gomez was a member of the STG "Barrio Azteca" and had been threatening to stab Mr. Leyba because Gomez believed Mr. Leyba was a member of "Sureno' 13." *See* Docket Entry # 16, Exhibit A at 10. There is no record that Gomez made threats to Mr. Leyba. Mr. Leyba was asked if he was associated with the gang "Sureno' 13" and he denied affiliation. *Id*. Mr. Leyba's tattoos were inspected and on his chest was found "SUR 13." *Id*.

After being caught in a lie, Mr. Leyba admitted that he was once affiliated but was now attempting to disassociate from "Sureno' 13." *Id*. Mr. Leyba claimed that when he entered the dining hall that he saw Gomez stand up and approach him, he further claimed that Gomez hit him with the pitcher in the face and that he only defended himself against Gomez' attacks. *Id*. Gomez was interviewed and stated that for the two-weeks prior Mr. Leyba had been spreading rumors that Gomez was gay and that when they confronted one another in the dining hall Mr. Leyba called him gay and hit Gomez in the face with the drinking pitcher. *Id*.

Officer G. Stewart CO II was present in the dining hall at the time of the altercation. *Id*. Stewart stated that he saw Mr. Leyba pick up the drinking pitcher and then strike Gomez in the face with it, and the two began fighting. *Id*. at 17. Based on the fact that gang involvement was alleged

by Mr. Leyba the Unit Classification Committee recommended that Mr. Leyba be transferred to another unit. *See* Docket Entry #16, Exhibit A at 10.

The records show that Mr. Leyba's altercation with Gomez was not connected with Mr. Leyba's initial OPI. The initial OPI and subsequent investigations stemmed from Mr. Leyba's claim that he was being targeted as a "snitch" because he was purportedly working with Officer Brown, conducting "covert tobacco operations". Mr. Leyba and his family reported that Mr. Leyba's safety was being threatened to TDCJ officials and they promptly responded by investigating the situation and determined that the claims lacked merit. Here, Mr. Leyba alleges – after the fact – that he was receiving threats from Gomez, but he never reported the alleged threats from Gomez prior to the altercation – which Mr. Leyba initiated. Thus, TDCJ officials were without notice of any threats or risk of harm related to Gomez, and were, therefore, unable to protect Mr. Leyba. When actual violence did occur, it was the result of Mr. Leyba's personal conflicts with offender Gomez, not the result of deliberate indifference on the part of Defendants.

Therefore, Mr. Leyba's claim, as demonstrated by the evidence, lacks merit. When Mr. Leyba claimed that there was a threat to his safety, TDCJ officials acted swiftly to determine whether Mr. Leyba was truly in danger by initiating and OPI, a follow-up STG interview with Mr. Leyba and the purported assailants, and concluded with a final review of the investigations and an interview by the OIG. Defendants responded to Mr. Leyba's fears, but detected no threats to his safety. Defendants cannot be held liable for a risk of harm that was not known to them; nor should they be liable for Mr. Leyba's personal choice to unexpectedly initiate an altercation with another offender.

Mr. Leyba also argued that he should be allowed to amend his complaint so that he might prevail in his lawsuit. He did not include a proposed amended complaint to his objections, nor did he provide any explanation on how his lawsuit could be replead to prevail under the facts contained in this record. Pursuant to Local Rule CV-7(k), Mr. Leyba's request to amend his complaint will be denied.

**Conclusion**

In conclusion, the complaint fails to state a claim upon which relief may be granted and is frivolous in that it lacks any basis in law and fact. The lawsuit will be dismissed pursuant to 28 U.S.C. §1915(e)(2)(B).

The Report of the Magistrate Judge, which contains his proposed findings of fact and recommendations for the disposition of such action, has been presented for consideration, and having made a *de novo* review of the objections adequately raised by Mr. Leyba to the Report, the court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and Mr. Leyba's objections are without merit. It is accordingly

**ORDERED** that Mr. Leyba's objections are overruled and the Report of the Magistrate Judge is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled civil action is **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C.§1915(b)(1). All motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **17** day of **July, 2017.**

_____
Ron Clark, United States District Judge